UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MOHAMMED MOHSIN,

       Petitioner,     **MEMORANDUM & ORDER**

  -against-

               06 CV 3240 (RJD) (JO)

ROBERT EBERT,

       Respondent.
----------------------------------------------------------X

DEARIE, Chief Judge.

  Mohammed Mohsin petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court referred the petition to Magistrate Judge James Orenstein for a Report and Recommendation in accordance with 28 U.S.C. §636(b).

  In his comprehensive, fifty-five page Report and Recommendation dated March 17, 2009, Magistrate Orenstein recommends that petitioner's application be denied. By Order dated March 27, 2009, the Court granted petitioner's motion for an extension of time to file his objections to the Report and Recommendation, which he timely filed in a statement dated May 4, 2009. The Objections expressly "address[]only certain aspects of the Report" but also incorporate in their entirety each of the arguments advanced in the 89-page brief submitted in support of the petition.

  Accordingly, the Court has reviewed the matter de novo. Having studied the parties' submissions along with the trial transcript and the lengthy post-trial state court record, the Court now adopts the Report and Recommendation in its entirety and without qualification. A copy of the Report and Recommendation is annexed hereto as an addendum to this Memorandum and Order.

# DISCUSSION

The thoroughness of Judge Orenstein's Report and Recommendation obviates the need to restate the factual background, or to engage in the needless formality of summarizing each of petitioner's six claims along with each capsule of Judge Orenstein's analysis in order to lodge the Court's piecemeal agreement. Still, because petitioner persists, in his Objections to the Report, in asserting that he is innocent of the crimes of which he was convicted, the Court explains here the features of the record and the Report that weigh most heavily and convincingly *against* the granting of habeas relief.

In his Objections, as in each of the state court proceedings occurring *after* his trial, petitioner relies principally on the victim's post-trial recantation of her trial testimony, along with several other witness statements and expert opinions also obtained *after* the trial. So equipped, petitioner seeks to cast himself as the victim of a criminal justice system stubbornly deaf to his plea of innocence. He writes:

> It was not until March 1996 that Ms. Sufian implication petitioner in the September 13, 1995 fire. At trial she was the only witness linking him to it. Almost immediately after the trial she recanted her trial testimony. At petitioner's sentencing, she begged the court to release him. Moreover, for the next 12 years through two motions to vacate, Ms. Sufian has steadfastly maintained that petitioner had nothing to do with the fire and that she herself intentionally set it. Her assertions have been corroborated by others and by scientific evidence presented to the state courts in the motions to vacate. *Yet to date no court has even ordered an evidentiary hearing to afford petitioner a reasonable opportunity to prove both his innocence and Ms. Sufian's perjury.* (Obj. 4, emphasis added).

There is a fatal shortcoming, however, in petitioner's breathless plea. He *was* afforded

precisely the opportunity he now claims had been withheld from him. That opportunity, of course, came in the form of his criminal trial, and the record shows that petitioner made abundant use of that opportunity by having vigorously challenged Sufian on several fronts. It is, in the end, immaterial that the jury did not learn of Sufian's recantations: contrary to petitioner's characterization of them, Sufian's recantations (along with the body of other post-trial statements purporting to corroborate them) are not of the "smoking gun" or "newly discovered" variety. Rather, the entire post-trial narrative reads as a more elaborate, more polished, and more strategically drafted version of the principal factual contentions and legal theories asserted at trial.

For example, although petitioner did not testify, his "version" of events was put before the jury through the testimony of Fire Marshal Roger Eckert and New York City Police Detective Miriam Piretti. Both testified that, shortly after the fire, petitioner stated that he had just left the apartment for work when, realizing he had forgotten his beeper, he returned, heard his girlfriend crying for help, summoned the landlord, and then broke down the apartment door and rescued her. T. 740, 853.

Similarly, cross-examination of Sufian exposed the same principal factual grounds for not crediting her testimony that now fuel petitioner's several perjury-based habeas claims. Among other things, the jury learned that Sufian had not implicated petitioner until six months after the fire and that she had initially told investigators that the fire resulted from an accident in the kitchen. The jury also learned of the turbulent amorous relationship between petitioner and Sufian, and heard both sides seek to explain actions of Sufian and petitioner as the result of that turbulence. Thus, the jury learned that Sufian had previously faked a suicide attempt in order to

secure petitioner's sympathy and that she blamed the fire on him only after he rebuffed her when she tried to visit him at work. Indeed, the jury heard counsel expressly argue petitioner's "version" of what really happened, namely, that Sufian, suffering from what counsel described as a kind of "fatal attraction" to petitioner, set herself on fire because she could not accept petitioner's decision to leave her. Finally, the jury learned that Sufian had lied in a variety of other contexts, including that she sued the landlord for negligence in order to support her initial false claim that an explosion on the kitchen stove caused the fire, and that she misrepresented her age and marital status in a Family Court petition for support from petitioner.

The fact that the jury nonetheless elected to credit Sufian's account of how petitioner set her on fire—riveting even on the cold transcript—is all but dispositive for habeas purposes. As Judge Orenstein's summary of habeas principles on this point succinctly and accurately explains, petitioner's burden is heavy: to obtain relief here, he must show that the jury's decision to credit Sufian is "an unreasonable determination of the facts in light of the evidence presented" within the meaning of 28 U.S.C. § 2254(d), and must likewise overcome the statutory presumption of correctness that attaches to state court factual findings by presenting "clear and convincing evidence" to the contrary within the meaning of 28 U.S.C. § 2254(e)(1).[1] See Report at 27. Petitioner could not possibly meet this burden by relying solely on the contents of his trial record: the jury that witnessed Sufian's demeanor and was offered many reasons not to believe her nonetheless chose to credit her compelling account. That finding is virtually inviolate.

---

[1] We note our agreement with Judge Orenstein's observation that the Second Circuit has not determined whether a habeas petitioner seeking relief from a state court decision that rested on a finding of fact must satisfy both of these statutory provisions or only one of them, and further agree that in any event petitioner cannot show make either showing. See Report at 27 (delineating these principles but in the context of a later round of factual findings).

Petitioner also fails to rebut the presumption of factual correctness, or to establish the unreasonableness of the jury's verdict and ensuing appellate affirmance, by relying on the post-trial recantations. First, as already stated, the recantations do not offer substantively new "evidence" but merely attempt to trigger a post-hoc, re-assessment of Sufian's credibility. Second, the state court that presided over petitioner's trial has reviewed those recantations and refused to credit them. See 330 Motion, Memorandum Decision at 2, 3 (recantation "inherently unreliable"); First 440 Motion, Memorandum Decision at 11 (recantation inherently suspect; Sufian's various accounts internally inconsistent). Of course petitioner's *second* 440 motion then sought to challenge *those* credibility findings by submitting still later-generated witness statements and expert affidavits purporting to corroborate the recantations. But nothing in those papers reveals *those* new statements to have been unavailable to petitioner at the time of his trial or, for that matter, at the time he made his 330 Motion or his First 440 Motion. More fundamentally, the succession of motions reveals petitioner's boundless capacity to generate, after each defeat, a next and more strategically crafted round of documents.[2] It is for this very reason, as Judge Orenstein soundly concluded, that recantations such as Sufian's have long been viewed with the "utmost suspicion."

---

[2] Indeed, one such document, by being so obviously tailored to a previous aspect of the case, has the effect of signaling the strategic rather than authentic nature of the post-trial record. At trial, two witnesses testified that petitioner appeared to be neat and clean at the time of the fire and rescue, and the state argued that the lack of any soot on his clothing undermined petitioner's claim that he rescued Sufian, given the soot-filled condition of the apartment and Sufian herself. Initially, petitioner challenged the thoroughness of the two witnesses' opportunity to observe appearance, and refuted the state's insistence that he should have had soot on him if he had really rescued Sufian as he claimed; eventually, however, in his second 440 motion, petitioner decided to submit an affidavit from someone who claimed that petitioner did in fact have a sooty appearance shortly after the fire and rescue.

In short, particularly because of petitioner's zealous claim of innocence, it bears remarking that the denial of habeas relief here rests not on unduly formalistic adherence to rules and presumptions but, to the contrary, illustrates a paradigmatic alignment among habeas burdens of proof, the federalism values they promote, and the underlying factual reality of the case. New York courts have three times elected to credit Sufian in the face of colorable claims to the contrary; more precisely, they have twice expressly chosen not to believe her post-trial change of heart. Such a multi-tiered credibility–based factual finding is, for all intents and purposes, unalterable on habeas. See 29 U.S.C. § 2254(d)(2), (e)(1). At the same time, the Court's close review of the record convinces it that even if there were authority to do so, there is no compelling reason to disturb those findings. To reiterate, it is immaterial that the jury did not learn of Sufian's recantations because the entire post-conviction theory constructed atop those recantations is the same theory that was presented to the jury, and because the factual matters bearing on Sufian's motives for implicating or not implicating petitioner (the high and low points of their relationship) were also presented to the jury. In short, nothing has been overlooked and no injustice has occurred. Habeas exists to provide relief when a conviction has been obtained in violation of the Constitution, not to provide a forum for retrying cases.[3]

---

[3] Similar analysis disposes of petitioner's assertions concerning the chain lock, a feature of the case that, in his Objections, he continues to maintain is dispositive proof of his innocence. Simply put, the identical argument and supporting evidence (including the photo of a broken lock on the pile of debris) were fully presented to the jury, which chose to reject it, and petitioner has not shown that decision to be unreasonable.

Likewise, petitioner's ineffective assistance of counsel claims (both trial and appellate) were fully litigated in state court, with the state court having elected to credit the statements submitted in opposition by the lawyers whose conduct was at issue. Such fully litigated ineffectiveness claims are relatively rare in contemporary habeas jurisprudence, and such credibility-based state court decisions are entitled to substantial deference.

## CONCLUSION

The Report and Recommendation of Magistrate Orenstein is hereby adopted in its entirety and without qualification, petitioner's application for a writ of habeas corpus is denied, and the petition is dismissed. Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. §2254(c)(2), a certificate of appealability shall not issue. In addition, this Court certifies pursuant to 28 U.S. C. §1915(a)(3) that any appeal would not be taken in good faith. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
      June 15, 2009

                                                s/ Judge Raymond J. Dearie
                                                _____
                                                RAYMOND J. DEARIE
                                                United States District Judge